*857 OPINION.
Littleton:
The first question raised by this appeal is whether the profits arising from the sale of the interest of the joint venturers in the several art collections transferred by them to the taxpayer corporation were income to them or to the taxpayer.
The evidence discloses that, prior to the organization of the taxpayer corporation, the four men named in the findings of fact were engaged in a joint venture and owned in equal shares an undivided one-half interest in several art collections. They also owned, in equal shares, accounts receivable and good will. It was decided by them to incorporate the joint venture and make it a permanent business, and, after considerable discussion, they agreed among themselves that the tangible assets of the business should be turned in to *858 the corporation for preferred stock and that the common stock of the corporation should be issued for the good will of the old business and divided among the four joint venturers, not. in proportion to their interest in the joint venture but according to their estimated future value to the corporation. One of the four joint venturers consented to that division of the common stock only on the condition that their undivided one-half interest in the several art collections should be transferred to the corporation at its cost to them, and that, upon the sale thereof, the net profits therefrom should be divided among the four venturers in equal shares, the corporation under no consideration to have any interest in the profits of the sale. A written agreement, designed to carry out the oral agreement and understanding between the joint venturers, was entered into by them and the corporation, whereupon they transferred to the'corporation the accounts receivable together with their interest in the several art collections. The net value of the tangible assets so transferred to the corporation had a value of $712,793.68, including, at cost, the undivided one-half interest of the joint venturers in the art collections. The joint venturers added to that amount sufficient cash to bring the total amount paid in to the corporation to $720,000, and to equalize their interest therein at $180,000 each, and in exchange therefor they received preferred stock of the corporation of the par value of $720,000, which was divided among them in equal shares. The common stock of the corporation was issued for the good will of the joint venture and $1,000 in cash, and was divided among the joint venturers in unequal shares. As the several art collections were sold, one-half of the sale price less cost of selling was turned over to the parties who owned an undivided one-half interest therein, and an amount equal to the cost to the joint venturers of their undivided one-half interest was retained by the corporation and the remainder ■ thereof, representing the profits from their one-half interest, was paid over to them in equal shares. The payments thus made to them amounted to $33,968.32 in the year 1918 and $73,120.77 in the year 1919.
It is our opinion that the profits in question were, and were intended to be, income to the four joint venturers, and that they did not at any time belong to the corporation. The joint venturers purchased, with the tangible assets of their business and some cash, preferred stock of the corporation of the par value of $720,000, for which they intended to pay only $720,000. They turned over cash, accounts receivable, and their undivided one-half interest in the art collection at cost. .The cost of their interest in the art collection, added to the accounts receivable and cash paid in, amounted to $720,-000, and it was intended by them, and the contract so provided, that *859 upon the sale of the art collection the corporation should retain only an amount equal to the cost to the joint Amnturers of their interest therein. Upon the sale of the entire collection and the retention by the corporation of an amount equal to the cost to the joint venturers of their interest therein, the corporation would have received for its preferred stock the amount of $720,000. If, as contended by the Commissioner, the profits involved herein belonged to the corporation, the four men named would not have had an equal interest therein, since they owned unequal amounts of the common stock of the corporation, and any excess of earnings over the amount necessary to pay dividends on the preferred stock would have been available to pay dividends on the common stock, which is the thing they desired to avoid. It was not intended that the corporation should retain or have any interest in the proceeds of the sales of the several art collections in excess of the amount of $455,556.75, the cost to the joint venturers of their interest therein, and it was this for which the contract provided. The profits in question were clearly income to the individuals, and did not at any time belong to the corporation. The Commissioner was therefore in error in taxing them as income to the corporation.
The second question presented is whether the profits arising from the sale of certain art objects to one Morton F. Plant, as set forth in the findings of fact, were income to the taxpayer in the year 1918 or in the year 1919. The Commissioner contends that they were income for the year 1918. In its petition the taxpayer raised the point that the sale was one on the installment plan and that the profits arising therefrom should be allocated to the several payments. It abandoned that contention, however, at the hearing. It reported the profits in question as income for the year 1919 and now contends that they were in fact income for that year. The amount of the profits involved is conceded to have been $61,268.75.
We are of the opinion, upon consideration of the evidence presented, that the position of the Commissioner as to this point is correct and should be approved. The transaction was clearly a sale of merchandise in the year 1918. The art' objects were delivered to Plant and the terms of purchase were communicated to him in writing. On May 8, 1918, he wrote to the taxpayer that “ I beg hereby to confirm the purchase,” and contracted to pay certain amounts of money at certain specified dates in accordance with the proposition made to him by the taxpayer. The transaction was completed so far as the taxpayer was concerned and, in the event of Plant’s failure to make payment, as set forth in his letter of May 8, 1918, the taxpayer could not have repossessed the art objects, but would have been limited to an action to enforce payment under the *860 contract to pay. The transaction was a completed sale in the year 1918, and, as the taxpayer kept its books of account on the accrual basis, the sale price was properly accruable in that year. We hold,, therefore, that the profits arising from the sale in question were income to the taxpaj^er in the year 1918.
ARUNDell not participating.